### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELI A. PUEBLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 23-cv-654-J |
| ) | |
| STATE OF OKLAHOMA, ex rel. ) | |
| OKLAHOMA SCHOOL OF ) | |
| SCIENCE AND MATHEMATICS, ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S

### PARTIAL MOTION TO DISMISS AND BRIEF IN SUPPORT

COMES NOW Plaintiff, Keli A. Pueblo, by and through her attorney, Katherine Mazaheri, of the Mazaheri Law Firm, for her *Response to Defendant's Partial Motion to Dismiss and Brief in Support*, alleges and states as follows:

### STATEMENT OF THE CASE

Plaintiff began her employment with OSSM on or about April 2016 as a Development Assistant. Plaintiff was later promoted to Development Manager. Plaintiff was subject to gender discrimination and sex-based stereotypes leading to a hostile work environment and Plaintiff's unlawful and retaliatory termination by OSSM. In the termination letter, OSSM alleged that due to Plaintiff's absence from work beginning on July 29, 2022, Plaintiff was terminated. However, Plaintiff had obtained approval to take two weeks off in order to utilize some of her accrued comp time.

Unlike the other male employees at OSSM, when Plaintiff was terminated, she was not

offered any benefits and she lost her health insurance. Despite a number of serious allegations against some of the male employees at OSSM, none faced disciplinary action or termination. As a result of Defendant's actions, Plaintiff has sustained multiple injuries. Furthermore, all adverse actions taken by Defendant against Plaintiff was intentional, willful, malicious, or in reckless disregard for the legal rights of Plaintiff.

Plaintiff asserts claims pursuant to gender discrimination, sex-based stereotypes, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. §2000e *et seq.*, as amended. Plaintiff also brings a state law claim for sex discrimination and retaliation as prohibited by the Oklahoma Anti-Discrimination Act (hereinafter "OADA"), *see* 25 O.S. §1101, §1601 *et seq*. Jurisdiction and venue are proper in the Unites States District Court for the Western District of Oklahoma because the claims arose in Oklahoma County, the unlawful employment practice occurred in Oklahoma County, and Plaintiff satisfied the GTCA notice requirements required to bring an OADA claim.

Defendant claims that Plaintiff's OADA claim should be dismissed for failure to comply with notice and commencement requirements of the GTCA, depriving the Court of subject matter jurisdiction over Plaintiff's state law claims. However, Plaintiff did in fact satisfy the GTCA notice and commencement requirements, thus giving the court subject matter jurisdiction over the Plaintiff's state law claims.

## STANDARD OF REVIEW

Generally, Rule 12(b)(1) motions take one of two forms, a facial attack or a factual attack. A moving party may make a facial attack on the complaint's allegations as to the

existence of subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995). In reviewing a facial attack, the district court must accept the allegations in the complaint as true. *Id.* In a factual attack, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. *Id.* at 1003. In reviewing a factual attack, a court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* Consequently, the parties may present evidence in the form of affidavits and other documents to show that the court has subject matter jurisdiction. Plaintiff believes that this Court should utilize a factual attack in accordance with Rule 12(b)(1) to determine that it has subject matter jurisdiction over Plaintiff's OADA retaliation claim as evidenced by Plaintiff's adherence to the notice and commencement requisites of the GTCA, as substantiated herein.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

The Oklahoma Anti-Discriminatory Act ("OADA"), 25 O.S. § 1101(A), provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of race, color, national origin, sex, religion, creed, age, disability or genetic information. Plaintiff's termination from OSSM was due to her status as a female. Plaintiff would not have faced such sex-based discrimination had she not been female. The acts and omissions by OSSM violate the Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. § 1101 et. seq.

Moreover, Plaintiff opposed the gender discrimination perpetuated by OSSM, she complied with the state auditors, she assisted with two gender discrimination investigations against OSSM, and she reported the sex and gender discrimination against her and others. Such opposition and participation are protected activity as defined by the OADA, 25 O.S. § 1601. OSSM's actions taken against Plaintiff following her protected activity in opposition to OSSM's illegal conduct are all retaliatory actions designed to prevent Plaintiff from exercising her rights under the OADA and Title VII. As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff is entitled to seek all legal and equitable remedies available to a prevailing plaintiff under the OADA and Title VII.

## II. PLAINTIFF COMPLIED WITH THE NOTICE AND COMMENCEMENT REQUIREMENTS OF THE GTCA

Plaintiff substantially complied with the Governmental Tort Claims Act (GTCA) and as a result this Court has subject matter jurisdiction. All tort actions against the State of Oklahoma and its agencies, including OSSM, are governed by the GTCA. *See* 51 O.S. § 152. Under the provisions of the GTCA, the state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. *See* 51 O.S. § 153(A).

Under the GTCA, a plaintiff is required to submit a tort claim notice to the appropriate state agency before bringing a cause of action in tort against the state. *Stainsby v. Okla. ex rel. Okla. Health Care Auth.*, No. CIV-21-1073-D, 2023 U.S. Dist. LEXIS

21105 (W.D. Okla. Feb. 8, 2023). The claim shall be in writing within one (1) year of the date the loss occurs. *See* 51 O.S. § 156 (B). Further, the written notice of claim to the state or a political subdivision shall state the date, time, place and circumstances of the claim, the identity of the state agency or agencies involved, the amount of compensation or other relief demanded, the name, address and telephone number of the claimant, the name, address, and telephone number of any agent authorized to settle the claim. *See* 51 O.S. § 156 (C).

Defendant claims that Plaintiff failed to comply with the notice and commencement requirements of the GTCA because she failed to present notice of her claim within one year of the date of any loss. Contrary to the Defendant's assertion, Plaintiff did present notice of her claim within a year of being terminated. Plaintiff was terminated on August 3, 2022. After receiving her the Right to Sue Letter from the EEOC and within a year of her termination, via a Confidential Settlement Communication letter, Plaintiff notified OSSM that Plaintiff had retained counsel to represent her with respect to all matters arising out of her employment with OSSM. *See Ex. #1, Confidential Communication Letter*. Plaintiff mailed this letter on June 22, 2023, to OSSM satisfying the one-year notice requirement of the GTCA. Furthermore, in the letter Plaintiff notified OSSM that during Plaintiff's employment, she was subject to gender discrimination, sex-based stereotypes leading to a hostile work environment, and retaliation resulting in her termination by OSSM, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and the Oklahoma Anti-Discrimination Act (OADA), Okla. Stat. tit. 25, § 1101, §1601 et seq.

As required by 51 O.S. 156 (E), Plaintiff's written notice of the claim via the Confidential Settlement Communication letter included the date, time, place and circumstances of the claim, the identity of the state agency involved, the amount of compensation or other relief demanded, the name, address and telephone number of the claimant, and the name, address and telephone number of any agent authorized to settle the claim. Further, the letter notified OSSM that if a resolution wasn't reached, Plaintiff would be filing a claim with the U.S. District Court for the Western District of Oklahoma. *See Confidential Communication Letter.*

Thus, all claims arising from tort actions against the State of Oklahoma and its agencies, including OSSM, are subject to the provisions of the GTCA. *See* 51 O.S. § 152. In response to the Defendant's assertion that Plaintiff failed to comply with the notice and commencement requisites of the GTCA, specifically with regards to the one-year timeframe for presenting a claim, Plaintiff did indeed adhere to the requirement by submitting notice of her claim within a year of her termination. This notice, as required by 51 O.S. § 156(E), encapsulated the essential components of the claim and informed OSSM of potential legal action if an amicable resolution was not achieved. In adherence to the GTCA and established legal precedent, the Plaintiff diligently met the stipulated notice obligations, substantiating that the Defendant's assertion to the contrary is without merit. Because Plaintiff substantially complied with the GTCA this court has subject matter jurisdiction.

### III. THE OKLAHOMA ANTI-DISCRIMINATION ACT PROVIDES FOR A RETALIATION CLAIM

Defendant erroneously argues that the Oklahoma Anti-Discriminatory Act ("OADA") does not provide for a retaliation claim and the bases their claim on *Edwards v. Andrews*, 2016 OK 107, 382 P.3d 1045, 1047 (Okla. 2016). Under the OADA, 25 O.S. § 1601, it is a discriminatory practice for a person to retaliate against an employee or discriminate against an employee because the employee has opposed a discriminatory practice, or because the employee has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

In *McDaniel v. Legend Energy Servs*, Plaintiff, filed an action alleging that she was subjected to discrimination on the basis of gender, the existence of a hostile work environment, and retaliation in violation of both Title VII and the Oklahoma Anti-Discrimination Act ("OADA"). The Defendant moved for the dismissal of Plaintiff's claim for retaliation under the OADA, citing *Edwards v. Andrews*, 2016 OK 107, 382 P.3d 1045, 1047 (Okla. 2016). *McDaniel v. Legend Energy Servs., LLC*, No. CIV-20-1278-R, 2021 U.S. Dist. LEXIS 27298 (W.D. Okla. Feb. 12, 2021). The Court determined that relying on *Edwards* without further input from the Oklahoma Supreme Court would be erroneous. *Id*. Moreover, the Court determined that *Edwards* was inconsistent because the definition of "employer" set forth in *§ 1301(1)*, excludes an individual. Therefore, the defendant could not be liable for violating 25 O.S. § 1601, which makes it a discriminatory practice to "retaliate or discriminate against a person because he has opposed a discriminatory practice, or because he has made a charge [or] filed a complaint. . . ." *Edwards*, 382 P.3d at 1047. *Id* at 3.

Further, the Court in *McDaniel v. Legend Energy Servs*, noted that the *Edwards* conclusion is contrary to earlier Oklahoma Supreme Court precedent, namely *Tate v. Browning-Ferris, Inc.*, 1992 OK 72, 833 P.2d 1218, 1227 (Okla. 1992). Although other provisions of the Act have been substantially modified since Tate, *§ 1601* has not been amended. 25 O.S. § 1350(B), addresses retaliation:

> In order to have standing in a court of law to allege discrimination arising from an employment-related matter, in a cause of action against an employer for discrimination based on . . . sex . . . or retaliation, an aggrieved party must, within one hundred eighty (180) days from the last date of alleged discrimination, file a charge of discrimination in employment with the Attorney General's Office of Civil Rights Enforcement or the Equal Employment Opportunity Commission alleging the basis of discrimination believed to have been perpetrated on the aggrieved party.

And 25 O.S. § 1350 (G) sets remedies for employment discrimination, although it does not reference retaliation. *Id* at 5.

Here, Plaintiff opposed the gender discrimination perpetuated by OSSM, she complied with the state auditors, she assisted with two gender discrimination investigations against OSSM, and she reported the sex and gender discrimination against her and others. Such opposition and participation are protected activities as defined by the OADA, 25 O.S. § 1601. OSSM's actions taken against Plaintiff following her protected activity in opposition to OSSM's illegal conduct were all retaliatory actions designed to prevent Plaintiff from exercising her rights under the OADA. Furthermore, Plaintiff filed a charge of discrimination in employment with the Equal Employment Opportunity Commission as required by OADA 25 O.S. § 1350(B). Plaintiff also satisfied the notice requirements under the Governmental Tort Claims Act (GTCA), 51 O.S. § 156(E) as described above.

Although 25 O.S. § 1350 (G) does not explicitly reference retaliation, Plaintiff may bring a retaliation claim under 25 O.S. § 1350(B) and this Court may exercise subject matter jurisdiction.

Thus, contrary to Defendant's claim, it is indisputable that OADA establishes a cause of action for retaliation claims. Moreover, based on *Edwards v. Andrews*, Defendant bases their claim that a cause of action for retaliation does not exist. However, the *McDaniel* court dispelled any reliance on the precedent set forth in *Edwards v. Andrews*, recognizing the divergence it posed from established Oklahoma Supreme Court precedent, notably from *Tate v. Browning-Ferris, Inc.* Furthermore, the court distinguished the fallacy in interpreting *§ 1350* of the OADA as diminishing the OADA's authority in allowing for retaliation claims, given the unmistakable provision in *§ 1350(B)* mandating the filing of charges encompassing retaliation. Consequently, it is evident that the OADA does indeed provide a framework for seeking redress against retaliatory employment actions in accordance with 25 O.S. *§ 1601*.

## IV. UNDER THE OADA AND TITLE VII PLAINTIFF CAN RECOVER BACK PAY, LIQUIDATED DAMAGES, COMPENSATORY DAMAGES, PUNITIVE DAMAGES AND ATTORNEY FEES.

The Oklahoma Anti-Discriminatory Act ("OADA"), 25 O.S. § 1101(A), provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of race, color, national origin, sex, religion, creed, age, disability or genetic information. Additionally, OADA 25 O.S. § 1601, makes it a discriminatory practice to "retaliate or discriminate against a person because she has

opposed a discriminatory practice, has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing. Under OADA, 25 O.S. § 1350 (G), Plaintiff can recover backpay and any additional amount as liquidated damages. Further, under 25 O.S. §§ 1350(H) and 1506.8, Plaintiff is entitled to recover court costs and attorney fees incurred in pursuing this action.

Title VII of the Civil Rights Act, 42 U.S.C § 2000e–2, makes it illegal for an employer to discriminate against any individual because of their race, color, religion, sex, or national origin. Additionally, 42 U.S.C. § 2000e-3(a) makes it illegal for an employer to retaliate against an employee who has opposed a discriminatory practice, made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. Further, under Title VII, a plaintiff may recover economic damages including backpay, interest on backpay, lost benefits, and frontpay, and non-economic damages in the form of compensatory and punitive damages. *42 U.S.C. § 1981a(b)*. A plaintiff is entitled to punitive damages if the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *42 U.S.C. § 1981a(b)(1)*. In addition, under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 2000e-5(k). *Bryson v. Renda Broad., Inc.*, No. 07-CV-0300-CVE-FHM, 2009 U.S. Dist. LEXIS 28676 at 42 (N.D. Okla. Apr. 3, 2009).

Here, Plaintiff's termination from OSSM was due to her status as a female, for opposing OSSM's discriminatory practices, for assisting with the state audit, and for assisting with the two previous sex discrimination investigations against OSSM. The acts and omissions

by OSSM violate the Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. § 1101 & 1601 and Title VII of the Civil Rights Act, 42 U.S.C § 2000e–2 & 200e–3, and entitle Plaintiff to back pay, liquidated damages, and attorney fees under the OADA and backpay, lost benefits, frontpay, compensatory damages, punitive damages, and attorney fees under Title VII.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests this Court not to dismiss Plaintiff's OADA claims and that it grants Plaintiff all relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED THIS 28th DAY OF August 2023.**

Katherine Mazaheri, OBA# 21746
Mazaheri Law Firm, PLLC
3000 W. Memorial Rd., Suite 230
Oklahoma City, OK 73120
Telephone: (405) 414-2222
katherine@mazaherilaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of _____, 2023, I mailed via U.S. mail, postage prepaid, a true and correct copy of the above and foregoing instrument, to the following:

Alejandra J. Brigida
Assistant Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
*Attorneys for Defendants*

                                                          Katherine Mazaheri

June 22, 2023

Sent via Certified Mail
Email: katherine@mazaherilawfirm.com

Oklahoma School of Science and Mathematics
Tony Cornforth
1141 N. Lincoln Blvd.
Oklahoma City, OK 73104

RE: *CONFIDENTIAL SETTLEMENT COMMUNICATION*—Keli A. Pueblo

To Whom It May Concern:

    This letter is to advise you that Mazaheri Law Firm has been retained to represent Ms. Keli A. Pueblo (a.k.a. Keli A. Nees), with respect to all matters arising out of her employment with Oklahoma School of Science and Mathematics ("OSSM"). During Ms. Pueblo's employment, she was subject to gender discrimination, sex-based stereotypes leading to a hostile work environment, and retaliation resulting in her termination by OSSM in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and the Oklahoma Anti-Discrimination Act (OADA), Okla. Stat. tit. 25, § 1101 et seq.

    On or about April 2016 Ms. Pueblo was hired as Development Assistant and was later promoted to Development Manager. However, on July 29, 2022, Ms. Pueblo was unexpectedly demoted to the position of secretary. This demotion occurred after the interim President at that time, Edna Manning, informed Ms. Pueblo that it was necessary to implement measures to restore OSSM and, consequently, demote her. Considering these circumstances, Ms. Pueblo raised concerns regarding whether her demotion was directly linked to her collaboration with the state audit. However, Ms. Manning neither confirmed nor denied any connection between the demotion and the collaboration. This led Ms. Pueblo to be ultimately terminated.

    In December of 2019, findings from an operational audit performed by the Oklahoma State Auditor and Inspector's Office were made public. Ms. Pueblo played a significant role in the audit findings by providing vital information to auditors over the course of several months. The OSSM Governing Board of Directors and the President were made aware of the serious findings. Some of the issues included questionable employment practices such as use of inappropriate language often sexual in nature when dealing with students, visitors, and employees, smoking cigarettes on state property, excessive video surveillance, and favoritism to certain employees. The audit noted corrective action recommendations based on the findings but the ones that were implemented were eventually undone by the Governing Board of Directors.

    Subsequently to the operational audit, Ms. Pueblo participated in two separate employment discrimination investigations regarding two female employees. Both were fired by OSSM within



two years of being hired, they were both in leadership positions, and they both were replaced by male employees already working at OSSM.

On numerous occasions Ms. Pueblo addressed to leadership her fear of Lynn Morgan. Mr. Morgan was the VP of Administrative Services at OSSM from 1998 until his "retirement" in 2019. He was permitted to smoke cigarettes on campus, in front of board members, students, and visitors. He'd use a trashcan in Ms. Pueblo's common area as his ash tray. Further, Mr. Morgan had numerous affairs with female employees. Ms. Pueblo has firsthand knowledge of three relationships that Mr. Morgan had between 2017 and 2019 with three female subordinates. Additionally, Mr. Morgan would routinely shower in his office after visits from these women. Mr. Morgan also had two children with a former assistant who reported directly to him. Female employees who engaged in sexual relationships with Mr. Morgan were often given special treatment in terms of office space, compensation, benefits, and workload expectations. As an example, Ms. Pueblo's supervisor, Pam Felactu was not permitted to move into a larger office because a newly hired female employee by Mr. Morgan was given that office.

As a result of the operational audit findings, Mr. Morgan was placed on paid administrative leave for four months by the Governing Board of Directors, costing OSSM over $34,000. Mr. Morgan was also given a longevity payment of $2,750, two months after his last day of paid administrative leave when longevity payments are only given if the employee is a current employee at the time of their anniversary. Ultimately, Mr. Morgan was permitted to simply retire from his position, allowing him to access all the benefits available to retirees. Not only was Mr. Morgan compensated during his administrative leave, but he was also paid the annual maximum allowable balance of 480 PTO hours at the end of his administrative leave. Shockingly, OSSM leadership celebrated Mr. Morgan's retirement despite all the allegations from female employee's and the findings from the audit.

Between 2017 and 2022 Ms. Pueblo began compiling post event/camp participant evaluations from Dr. Mark Li, the OSSM Camp Director. The camps were designed for middle school math and science teachers where teachers would stay at the OSSM campus for a full week. In the evaluations Ms. Pueblo found alarming information regarding sexual misconduct from Dr. Li, which Ms. Pueblo reported to her direct supervisors: Pam Felactu (Director of Development), Dr. Frank Wang (President), and Dr. Brent Richards (VP of Academic Services). Instead of addressing the sexual conduct allegations found in the evaluations, OSSM highlighted Mr. Li's work.

In January of 2022, Ms. Pueblo notified OSSM leadership that Dr. Dutch Ratliff had posted a sign on his office door made by female students that read "Professor McDreamy." Also, Ms. Pueblo reported that Dr. Ratliff gave the "Rice Purity Test" to his math class and Executive Assistant Elizabeth Jacoby. The test asked whether the participant had held hands romantically, French kissed in public, kissed or been kissed on the breast, kissed someone below the belt, etc. The test was meant to serve as the final for the class. Nothing resulted from Ms. Pueblo's reporting.

In 2020, Human Resources Generalist, Kari Kuykendall was hired as a result of the recommendations made in the audit. In August of 2020, five female employees including Ms.

Pueblo, reported to Ms. Kuykendall the persistent instances of inappropriate sexual behavior they had endured from Mr. Bill Kuehl. Ms. Pueblo and the other women disclosed the details of the inappropriate behavior to Board Chairman Dan Little and Executive Committee Trustee Donna Windel. Despite the gravity of the situation, no disciplinary measures were taken against Mr. Kuehl. Further, a parent reported to Ms. Pueblo that she had become concerned after reviewing an email that was sent by Mr. Kuehl. Mr. Kuehl had requested students to send money to his personal Venmo account for senior items. The mother was concerned not only because he requested funds to go to his personal account but also because there were payments listed for sexual favors in his personal Venmo account. Ms. Pueblo reported this as well.

In August of 2021, Ms. Pueblo reported to Ms. Kuykendall that Greg Madden, the Director of Maintenance, spoke to female colleagues in a demeaning and sexual tone. Instead of using Ms. Pueblo's name when he addressed her in front of co-workers and students, he'd instead refer to her as "sunshine," "doll face," or "pretty girl". Prior to effectively addressing the matter at hand, Ms. Kuykendall was terminated from her position. Notably, her termination coincided with her efforts to address and investigate the numerous allegations of inappropriate sexual behavior.

Each year, OSSM sends an annual appeal to alumni and alumni family members. Each year Ms. Pueblo would receive letters from alumni asking OSSM to address the sexual misconduct of several professors. Specifically, Dr. Bachman. Dr. Bachman spoke sexually to students, faculty, and staff. Dr. Bachman would routinely ask Ms. Pueblo what the size of her breasts were, and he would ask her what the size of the breasts of other female employees at OSSM were. Ms. Pueblo also reported to leadership an incident in which she heard Dr. Bachman asking another female employee what the size of her breasts were while she was pregnant. Despite all the complaints received from students, parents, and female employees such as Ms. Pueblo, Dr. Bachman remains a celebrated faculty member at OSSM.

In November of 2021, Ms. Hiett resigned from OSSM after being denied a promotion that was more aligned with her role and responsibilities and had a salary increase. As a result, Jonathan Triplett was hired to replace Ms. Hiett as the Residence Hall Coordinator. Mr. Triplett would often discuss physically fighting with Linda Walters because she did not include his name on the graduation program and he would often refer to the OSSM President, Dr. Wang, as a "fucking faggot" in front of students. A parent reported that Mr. Triplett had acted aggressively so the parent was fearful to pick up his daughter from campus. On June 2, 2022, Mr. Tripplet's girlfriend who resided with Mr. Tripplet on campus confided to Ms. Pueblo that she suffered extreme physical abuse from Mr. Tripplet. Ms. Pueblo reported the allegations to Dr. Brent Richards, the VP of Academic Services, out of concern for the safety of the students. On May 10, 2023, Mr. Tripplet entered a guilty plea to a misdemeanor for operating a motor vehicle under the influence of alcohol. Mr. Tripplet never faced any consequences and has now been promoted to Dean of Students.

Ms. Pueblo worked 60-hour work weeks. Throughout her employment she had exceptional reviews. On July 29, 2022, Ms. Pueblo was demoted to secretary. As a result of working on one of the Camps, Ms. Pueblo was scheduled to be off for two weeks due to her accrued comp time. That day, Interim President Edan Manning approached Ms. Pueblo and expressed her intention to

restore OSSM and to demote Ms. Pueblo to the secretary position. Consequently, Ms. Pueblo mentioned that someone had already been hired for that role and asked whether her demotion was due to her collaboration with the state auditors, but Ms. Manning did not offer a response. On August 3, 2022, Ms. Pueblo received a termination letter from OSSM. In the letter, OSSM explained that due to Ms. Pueblo being absent from work since July 29, 2022, she was terminated from her position. However, Ms. Pueblo had been approved to be off for two weeks due to her comp time.

After her termination, Ms. Pueblo was constantly contacted to aid on matters that only she knew how to do. Ms. Pueblo was never paid her leave balance and her longevity payment was made when Ms. Pueblo filed a Wage Claim Form, despite it being owed to her prior to being terminated. Unlike the male employees, Ms. Pueblo was not offered any benefits. Further, during Ms. Pueblo's four years at OSSM, a number of female employees were terminated, and others resigned due to the terrible work conditions for women at OSSM. Despite several serious allegations against the listed male employees above, they were rarely reprehended and much less terminated.

Please be advised that Ms. Pueblo feels strongly about the wrongs that she has suffered and her need to pursue justice. She is deeply hurt by what she was subjected to at OSSM and intends to pursue this matter diligently to conclusion if prompt settlement cannot be accomplished. However, I have found that it is often in the best interests of both parties to make a sincere preliminary effort to reach a confidential resolution to disputed matters, particularly in a case where the subject matter is particularly sensitive.

Ms. Pueblo has suffered a significant loss of career path and opportunity, loss of earnings, loss of benefits, and other compensation; and consequential and compensatory damages including, but not limited to, those for humiliation, loss of dignity, loss of enjoyment of life, worry, stress, and anxiety. She makes a good faith offer in the amount of **$290,782.00.** If you have an interest in discussing the resolution of this dispute in advance of Ms. Pueblo filing a Federal Complaint against OSSM, please contact our office by 5 pm on **June 29, 2023**, after which date Ms. Pueblo will proceed with filing this matter with the U.S. District Court for the Western District of Oklahoma on June 30, 2023. Thank you for your time and consideration in this matter, and I look forward to your response.

Sincerely,

*[signature]*

Katherine Mazaheri
For the Firm

Cc:   Ms. Keli A. Pueblo